

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00085-CR

JERRY PAUL LUNDGREN                                         APPELLANT

V.

THE STATE OF TEXAS                                               STATE

----------

## FROM COUNTY COURT AT LAW OF WISE COUNTY

----------

## OPINION

----------

Appellant Jerry Paul Lundgren appeals from the denial of his motion to suppress and motion to quash the State's motion to revoke his community supervision. Finding no reversible error in the denials, we affirm the trial court's judgment.

## I. BACKGROUND

On August 18, 2010, Appellant was charged by information with driving while intoxicated. The information included an allegation that Appellant

previously had been convicted of driving while intoxicated in 2009. Appellant pleaded guilty to the information under a plea-bargain agreement, and the trial court sentenced Appellant to 365 days' confinement on January 7, 2011. The trial court suspended Appellant's sentence and placed him on community supervision for 18 months. The community-supervision terms prohibited Appellant from committing any new offense and required him to abstain from alcohol. The trial court's judgment stated that the sentence commenced that same day—January 7, 2011. Appellant's plea-bargain agreement further included the provision that "the defendant has NO right of appeal." The trial court admonished Appellant that he, indeed, could not appeal:

> When the [C]ourt follows a plea[-]bargain agreement, permission of the Court must be given before you can prosecute an appeal on any matter in the case, except for a matter raised by written motion filed prior to trial. This Court seldom consents to an appeal where a conviction is based upon a guilty plea.

Seven days later on January 14, 2011, Appellant again was arrested following a report to police that the driver of a silver truck was passed out in the drive-through lane of a Whataburger. The responding police officer saw a silver truck in the drive-through lane as reported. The driver, who the officer later identified as Appellant, was awake when the officer approached the truck. Based on Appellant's demeanor and the odor of alcohol, the officer conducted a field-sobriety test and then arrested Appellant for driving while intoxicated.

On January 19, 2011, Appellant filed a notice of appeal from his community-supervision sentence. On January 28, 2011, Appellant filed a motion

2

for new trial, which was overruled by operation of law on March 23, 2011.[1]  *See* Tex. R. App. P. 21.8(c).  On February 18, 2011, the State filed a motion to revoke Appellant's community supervision based on the new January 14, 2011 offense and Appellant's use of alcohol—both of which violated the community-supervision terms.  On March 3, 2011, this court dismissed Appellant's appeal for want of jurisdiction based on Appellant's waiver and issued mandate on May 12, 2011.  *Lundgren v. State*, No. 02-11-00023-CR, 2011 WL 754344, at *1 (Tex. App.—Fort Worth Mar. 3, 2011, no pet.) (mem. op., not designated for publication).

On June 22, 2011, the trial court entered a "Post Mandate Enforcement of Prior Judgment of Conviction Sentence Suspended," stating that the sentence would commence that same day.  Two days later, the trial court entered a nunc-pro-tunc, post-mandate judgment, apparently to include the suspension of Appellant's driver's license for 180 days, which had been part of the January 7, 2011 judgment but had been omitted from the June 22, 2011 post-mandate judgment.  The nunc-pro-tunc judgment also stated that the sentence commenced on June 22, 2011.

On July 13, 2011, Appellant sought to quash the State's motion to revoke his community supervision because the grounds for the motion—Appellant's arrest for a new offense and use of alcohol—occurred when the community-

---

[1]It appears the motion for new trial was never presented to the court as required by rule 21.6.  *See* Tex. R. App. P. 21.6.

3

supervision terms had not taken legal effect. The trial court denied the motion and explained that Appellant's "failure to obtain permission of the trial court was a failure at the trial court level, not the appellate court level, so the probation terms came into effect immediately" on January 7, 2011. During the subsequent hearing on the State's motion to revoke, Appellant sought to suppress any evidence discovered during Appellant's January 14, 2011 arrest based on a lack of "reasonable suspicion or probable cause to detain and seize [Appellant]." The trial court denied Appellant's motion to suppress, found by a preponderance of the evidence that Appellant had violated the terms of his community supervision, revoked Appellant's community supervision, and sentenced him to 300 days' confinement. This appeal followed.

## II. DENIAL OF MOTION TO QUASH

### A. Effect of Notice of Appeal and Motion for New Trial

In his first issue, Appellant argues that the trial court erred by denying his motion to quash the State's motion to revoke community supervision because the judgment on which the community supervision was based had been appealed. In short, Appellant asserts that the terms of his community supervision did not begin until after this court issued its mandate; therefore, his January 14, 2011 arrest and use of alcohol could not violate terms that were not in effect at that time.

The State responds that Appellant's waiver of appeal operated to begin the terms of community supervision immediately on the date of the judgment—

4

January 7, 2011. Therefore, Appellant's January 14, 2011 arrest and use of alcohol violated the terms of the January 7, 2011 community-supervision judgment, implicating the State's right to seek revocation:

> Appellant should not be allowed [to] avoid the consequences of his actions by simply filing his post-waiver notice of appeal. If allowed, there would be no need for a waiver in Texas cases where a plea is reached. In fact, a holding that allows a [d]efendant to go behind the waiver in this manner would simply delete the requirement of a waiver in cases where a plea is reached. After all, what is the point of a waiver, if you can waive your right to get the plea in the first place, but not really waive your rights if you commit a crime prior to the trial court's plenary power expiring.

Accordingly, the question we are asked to decide is when the terms of a community-supervision judgment take effect if the defendant violates the terms while the trial court has plenary jurisdiction and before a notice of appeal or a motion for new trial is filed. No one disputes that Appellant voluntarily pleaded guilty and waived his right to appeal, which prevents him from appealing any issue in the case without the consent of the trial court that was not raised in a written pretrial motion. *See Monreal v. State*, 99 S.W.3d 615, 622 (Tex. Crim. App. 2003). Further, all parties agree that the terms and conditions of community supervision are not in effect while a case is on appeal or during the pendency of a motion for new trial.[2] *See Ross v. State*, 523 S.W.2d 402, 405 (Tex. Crim. App. 1975); *Humphries v. State*, 261 S.W.3d 144, 145 (Tex. App.—San Antonio

---

[2]We note that we are not asked to decide whether any violative actions by Appellant during the pendency of his appeal or motion for new trial could have been used as grounds to revoke his community supervision. Thus, we do not address that issue.

2008, no pet.); *McConnell v. State*, 34 S.W.3d 27, 30 (Tex. App.—Tyler 2000, no pet.). Here, however, Appellant violated the terms of his community supervision before he filed either a notice of appeal or a motion for new trial and after the trial court entered judgment stating that the community-supervision terms and conditions started immediately. Appellant's position, therefore, is that his post-violation notice of appeal and motion for new trial retroactively acted as a panacea for his violations, removing the State's power to revoke because the post-sentence violations occurred during the trial court's plenary jurisdiction.

Appellant's motion for new trial was filed "in the interest of justice and because the verdict was contrary to the law and the evidence." This is not the situation the dissent describes where the "defendant must file a motion for new trial to complain of conditions of community supervision, involuntariness of a negotiated plea, or ineffective assistance of counsel or that the punishment is infirm."[3] Appellant filed his motion for new trial after filing his notice of appeal. The motion for new trial was never presented to the court as required by rule 21.6 and was overruled by operation of law on March 23, 2011 (75 days after the January 7 judgment was imposed). *See* Tex. R. App. P. 21.6, 21.8(c).

---

[3]We disagree with the dissent attributing a rationale that simply does not exist in the majority opinion. The dissent concludes that "[t]he reason given is that he cannot benefit from a rule of procedure that is meant to make pursuit of certain complaints more onerous." We have neither reasoned that a rule of procedure requiring a motion for new trial exists to make pursuit of complaints more onerous nor that Appellant should not prevail because he would benefit from that same rule.

Therefore, Appellant's motion for new trial served no purpose other than to extend the trial court's plenary power.  *See* Tex. Code Crim. Proc. Ann. art. 44.02 (West 2006); Tex. R. App. P. 25.2(a)(2).

The cases relied on by Appellant to support his argument are distinguishable.  In those cases, the violations did not occur after the community supervision was imposed and commenced pursuant to a plea bargain but before a notice of appeal or motion for new trial was filed.  Indeed, in most of the cases, the violations occurred while an appeal or a motion for new trial was pending.  *See, e.g., Ross*, 523 S.W.2d at 405 (violation of community supervision occurred after appeal dismissed but before mandate, which subjected defendant to revocation); *Smith v. State*, 478 S.W.2d 518, 520 (Tex. Crim. App. 1972) (community supervision imposed after bench trial did not begin until appeal finally disposed of); *Goodson v. State*, 221 S.W.3d 303, 305 (Tex. App.—Fort Worth 2007, no pet.) (violation occurring after appellate mandate issued but before defendant received notice of mandate could be used to revoke); *Humphries*, 261 S.W.3d at 144–45 (terms of community supervision imposed after jury verdict could not be set during pendency of appeal); *see also Milburn v. State*, 201 S.W.3d 749, 751–52 (Tex. Crim. App. 2006) (holding because prior conviction not final at the time sentence in subsequent offense entered, prior conviction could not be used to deny community supervision in subsequent offense); *Jordan v. State*, 36 S.W.3d 871, 877 (Tex. Crim. App. 2001) (same).

7

We recognize that blanket statements regarding the effect of an appeal or a motion for new trial on the commencement of community supervision are facially appealing as setting out a bright-line and easily-applied rule. *See McConathy v. State*, 544 S.W.2d 666, 668 (Tex. Crim. App. 1976) ("[T]he terms of probation commenced on the day the amended motion for new trial was overruled by operation of law."); 43B George E. Dix et al., *Texas Practice Series: Criminal Practice and Procedure* § 55:137 (3d ed. 2011) ("[I]f a defendant is placed on community supervision and files [a] notice of appeal, the community supervision does not begin until the conclusion of the appellate process."). But such statements do not take into account the procedural facts present in the instant case. In short, we must look at the state of the record at the time Appellant violated his community-supervision terms and not after he filed his notice of appeal or motion for new trial. On January 14, 2011 (the date of Appellant's violations), the trial court had stated in its judgment that Appellant's community-supervision terms had begun on January 7, 2011. Appellant had waived his right to appeal and had not filed a motion for new trial. Thus, at the time of the violations, the community-supervision terms were in effect, subjecting Appellant to the possibility of revocation. As noted above, had Appellant violated the terms of his community supervision while his notice of appeal or motion for new trial were pending, we would be faced with a different issue and, possibly, a different outcome. That is not the case at hand.

We acknowledge that several cases hold that community-supervision terms and conditions do not "commence" until after the appellate mandate issues. *E.g.*, *Goodson v. State*, 221 S.W.3d 303, 305 (Tex. App.—Fort Worth 2007, no pet.); *Cuellar v. State*, 985 S.W.2d 656, 658 (Tex. App.—Houston [1st Dist.] 1999, no pet.). However, these cases rely on a 1977 case from the court of criminal appeals that is distinguishable. *See Surety Corp. of Am. v. State*, 550 S.W.2d 689, 690 (Tex. Crim. App. 1977). The appellant in *Surety* filed a notice of appeal the same day that the trial court suspended the appellant's sentence and placed him on probation. *Id.* These facts are not similar to the instant case. Here, Appellant waived his right to appeal at the time he was placed on community supervision, and the trial court and Appellant, under the clear terms of the plea-bargain agreement, both expected that the terms and conditions would start at the time they were imposed. *See McConnell*, 34 S.W.3d at 30. Additionally and unlike *Surety*, there was no trigger to alert the trial court or Appellant that the terms and conditions would be suspended or stayed at the time they were imposed and before Appellant violated those terms and conditions.

A trial court has the jurisdiction and authority to punish violations of its terms and conditions of community supervision. *Id.* Indeed, the community-supervision statute places the responsibility to supervise community-supervision defendants "wholly within the state courts." Tex. Code Crim. Proc. Ann. art. 42.12, § 1 (West Supp. 2012). Further, the trial court may extend or modify the

9

terms and conditions "at any time." *Id.* art. 42.12, §§ 21–22. In short, "[t]he defendant is subject to the court's control, not vice versa." *McConnell*, 34 S.W.3d at 30. To require the trial court to automatically stay the commencement of the terms and conditions when the defendant expressly waives his right to appeal would interfere with the broad authority granted by these statutes. *Cf. Milburn v. State*, 201 S.W.3d 749, 753 (Tex. Crim. App. 2006) (stating "the trial judge should not be placed in the position of having to guess what a party is going to do next" and holding non-final prior felony conviction could not be used to deny community supervision following subsequent conviction).

We also recognize that the court of criminal appeals has suggested that a timely notice of appeal filed after a defendant drives an automobile in violation of an automatic suspension of his driver's license "would have . . . retroactively stayed [the automatic suspension] during the pendency of his appeal." *Jones v. State*, 77 S.W.3d 819, 824 n.18 (Tex. Crim. App. 2002). In *Jones*, however, the court of criminal appeals interpreted a statute that automatically suspends a defendant's driver's license upon "final conviction" of enumerated offenses. Tex. Transp. Code Ann. § 521.372(a) (West 2013). The community-supervision statute, on the other hand, does not require a "final conviction" before the trial court's authority to enforce its terms and conditions may begin.[4] Section

---

[4]Likewise, this case is distinguishable from those cases that determine whether a defendant was "finally convicted" in a previous community-supervision judgment such that it may be used for punishment enhancement for a subsequent offense. Tex. Penal Code Ann. § 12.42 (West Supp. 2012); *see*

521.372(a) is an automatic and administrative suspension that necessarily requires a final conviction before administrative action. It does not implicate a trial court's power and responsibility to supervise a community-supervision defendant under article 12.42.

We construe the rules of appellate procedure and the code of criminal procedure by applying statutory-construction principles. *See Tamez v. State*, 11 S.W.3d 198, 203 (Tex. Crim. App. 2000) (citing *Boykin v. State*, 818 S.W.2d 782, 785–86 & n.4 (Tex. Crim. App. 1991)); *State v. Hardy*, 963 S.W.2d 516, 519 (Tex. Crim. App. 1997); *Bradford v. State*, 172 S.W.3d 1, 4–5 (Tex. App.—Fort Worth 2005, no pet.). As such, we apply the plain meaning of the words contained in the rule unless the plain meaning would lead to an absurd result. *See Mercier v. State*, 96 S.W.3d 560, 562 (Tex. App.—Fort Worth 2002, pet. struck). Appellant argues that the terms of probation were not in effect when he committed the new DWI offense seven days after his plea and after the judgment was signed and the sentence commenced. Approval of Appellant's argument would create an unworkable and absurd result.

The following hypotheticals illustrate the absurdity of Appellant's requested construction. In each, a defendant pleads guilty pursuant to a fully negotiated plea bargain and does so knowingly, intelligently, and voluntarily, and, as a part

*Fletcher v. State*, 214 S.W.3d 5, 8–9 (Tex. Crim. App. 2007); *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992). Here, the State is not attempting to use Appellant's January 7, 2011 community-supervision judgment to enhance his punishment for a subsequent offense under section 12.42.

11

of that plea-bargained exchange, the defendant waives his right to appeal. In the first hypothetical, the defendant remains incarcerated until the day he pleads guilty to assault for an act of violence perpetrated against his spouse. In exchange for his voluntary guilty plea, the State recommends community supervision. One of its terms is that the defendant have no contact with his spouse, either in person or by any form of written or verbal communication. The court accepts the plea-bargain agreement and releases the defendant from jail with the mutual expectation that all terms and conditions of community supervision became effective on the day of the plea. The next day the defendant goes to his stepson's sporting event and sits next to his spouse; the following day, he shows up in line behind her at the grocery store; and the day after, watches her from his car, which is parked next to hers at her place of employment, as she retrieves a non-threatening note he had slipped under her windshield wiper. His spouse spots him at all times of the day and night driving on her street and he continues to appear at every public place she visits. The defendant's behavior continues for 28 days and on the 29th day after his plea, he files a motion for new trial.

In the second hypothetical, the defendant, out of jail on a cash bond, pleads guilty pursuant to a plea-bargain agreement to felony possession of a controlled substance. The court, once again, approves the plea-bargain agreement and sentences the defendant to community supervision. The terms and conditions of his community supervision include remaining in Texas and

12

abstaining from the use of marijuana or any controlled substance. The defendant is discharged from his bond and receives his cash bond back. The next day, he travels to Washington, where he remains and avails himself of the laws of that state, which allow him to smoke marijuana on a daily basis. On day 29 after his plea and sentence, the defendant files a motion for new trial.

If the law is interpreted as Appellant and the dissent argue, then the filing of the motion for new trial in each of these cases retroactively stamps a "King's X" on these clear and intentional violations of the terms and conditions of community supervision and eviscerates the trial court's power to enforce its order. Not only would Appellant's position forgive all these past violations, but the defendants in our hypotheticals would have free reign to continue these transgressions for up to 75 days after their community-supervision sentences are imposed.[5]

Once a trial court declares it will accept a plea agreement and "binds itself to the terms, both the defendant and the prosecutor are entitled to the benefit of the agreement. At the same time, both the defendant and the prosecutor are also bound to uphold their ends of the bargain." *State v. Moore*, 240 S.W.3d 248, 251 (Tex. Crim. App. 2007) (citing *Ex parte Williams*, 637 S.W.2d 943, 947 (Tex. Crim. App. 1982), *cert. denied sub nom. Williams v. Texas*, 462 U.S. 1108

---

[5]"The court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court." Tex. R. App. P. 21.8(a). A motion not ruled on by written order within this 75-day period is "deemed denied." Tex. R. App. P. 21.8(c).

13

(1983)).[6]  In each of our hypotheticals, the State stood before the court and agreed to the terms and conditions, thereby compelling the trial court to order the defendant released from jail or discharged from bond based on the mutual agreements.  The State upheld its end of the bargain, yet the defendant did not.  The absurdity lies in the defendant's ability to display such disrespect and disdain for the court and yet wipe clean his past violations and get an extended opportunity to continue his conduct.  The defendant reaped the benefits of the plea bargain and wishes this court to sanction his manipulation of the system when the deal worked to his detriment—when he was arrested for committing a new offense.  Under Appellant's reasoning, a trial court that approves a plea-bargain agreement must bestow the benefits of the agreement upon the defendant but has no authority to enforce its order for at least 30 days.[7]

Accordingly, we conclude that Appellant's community-supervision terms were in effect at the time he violated them and his subsequent (yet timely) notice of appeal and motion for new trial were ineffective to retroactively act as a cure for those violations.  *See McConnell*, 34 S.W.3d at 30 ("We hold that prior to the

---

[6]Appellant's proposed result arguably would likewise eradicate any compliant actions that a defendant had performed before filing a motion for new trial such as community-service hours performed or fines paid.

[7]This interpretation of the law would obligate a trial court to release a defendant placed on community supervision and risk that the defendant will commit a catastrophic violation—which is what a community-supervision order is designed to protect against—during the trial court's plenary power for which there would be no remedy.

14

filing of a motion for new trial, the trial court retains jurisdiction and has the power to exercise its authority to punish violations of its conditions of community supervision. To hold otherwise would permit a criminal defendant to manipulate the system to its manifest detriment.") We overrule issue one.

## B. Effect of Post-Mandate and Nunc-Pro-Tunc Judgments

In his second issue, Appellant contends that the State's motion to revoke should have been quashed because the post-mandate and nunc-pro-tunc judgments provided that the community-supervision terms "commenced" on June 22, 2011, which was after his January 14, 2011 arrest. Appellant extrapolates that these post-violation judgments retroactively delayed the commencement of his community supervision.

As with his first issue, Appellant's argument facially appears to have merit. After all, a violation that occurs before community supervision was in effect cannot support revocation. But, once again, the unique procedural posture of this case requires a different result. At the time of Appellant's violation, the judgment stated his community supervision commenced seven days before the violation. We conclude that the post-mandate judgments did not alter what occurred before they were entered.[8]

---

[8]As the State points out, the trial court's "policy and procedure following a properly appealed verdict is to enter a *nunc pro tunc* judgment detailing the date on which the Defendant's sentence is to commence." In this case, such procedure was ill-advised because the trial court also concluded that the motion for new trial and notice of appeal were ineffective to change the commencement

15

### III. MOTION TO SUPPRESS

Appellant argues that the evidence obtained after the officer asked him to pull out of the drive-through lane should have been suppressed because the initial call regarding the silver truck was unconfirmed and because the officer did not have reasonable suspicion that Appellant was involved in criminal activity or probable cause to arrest him.

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

On January 14, 2011, Officer Seth Martin was dispatched to a Whataburger because "[t]here was a reported driver who was supposed to be

---

of community supervision; thus, the commencement date should have remained unchanged.

16

passed out behind the wheel in a silver pickup truck in the drive through." When Officer Martin arrived, he saw a silver truck stuck in the drive-through lane because it had rolled into a curb. Officer Martin parked his car and approached the truck on foot. The driver, later identified as Appellant, had his window rolled down with the engine running and was talking to someone outside his truck. Officer Martin asked Appellant for identification and asked him to back up to move his truck out of the drive-through lane. Appellant complied, parked, and got out of his truck to talk to Officer Martin. Officer Martin noticed that Appellant's balance was "uneasy" and smelled alcohol on his breath. Officer Martin conducted a partial horizontal-gaze-nystagmus test on Appellant, which he failed. Appellant refused to take any further field-sobriety tests. Officer Martin asked Appellant if he had been drinking, and Appellant admitted he had had two beers at the bar across the street from the Whataburger. Officer Martin arrested Appellant for driving while intoxicated based on "the positioning of [Appellant's] vehicle in the drive through, . . . what had been reported, his demeanor, the heavy smell of alcohol on his breath, [and] his inability to maintain his balance."

There are three types of interactions between police and citizens: (1) consensual encounters, which require no objective justification, (2) investigatory detentions, which require reasonable suspicion, and (3) arrests, which require probable cause. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). The State argues that because the encounter between Appellant and Officer Martin was consensual, there was no need for a showing of reasonable

17

suspicion.  *See State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011) (holding consensual police-citizen encounters do not implicate the Fourth Amendment).   Indeed, a consensual encounter will not trigger the Fourth Amendment "unless it loses its consensual nature."  *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991).

In determining whether an interaction between police officers and a citizen is a consensual encounter, we must look at the totality of the circumstances, which includes the officer's conduct as well as the setting in which the interaction takes place.  *Crain v. State*, 315 S.W.3d 43, 51 (Tex. Crim. App. 2010).  This encounter occurred in a public place and the evidence shows no actual use of physical force, threatening language or tone, or the display of a weapon by the single officer present.  *See United States v. Mendenhall*, 446 U.S. 544, 554–55, 100 S. Ct. 1870, 1877–78 (1980).  Officer Martin approached Appellant on foot and did not force Appellant to stop or roll down his window.  Officer Martin merely asked Appellant for identification and to move his car.  *See Castleberry*, 332 S.W.3d at 466 (stating officer's simple request for identification "does not negate the consensual nature of the encounter").

In this case, the totality of the circumstances, viewed in the light most favorable to the trial court's ruling, shows that the encounter was consensual and, thus, not subject to the requirements of the Fourth Amendment.[9]  Once

---

[9]Appellant's arguments that the information given to Officer Martin was insufficient to show Appellant was the subject of the anonymous call are

Officer Martin performed the partial field sobriety test and had the benefit of all his observations from the initial voluntary encounter forward, he had sufficient probable cause to arrest Appellant for driving while intoxicated. We overrule Appellant's third issue.[10]

## IV. CONCLUSION

We conclude that Appellant's violations of his community-supervision terms, occurring after his negotiated sentence of community supervision commenced but before Appellant timely filed a notice of appeal and motion for new trial, subjected him to possible revocation. The trial court's post-mandate and nunc-pro-tunc judgments do not change the effect of Appellant's post-sentence violations occurring during the trial court's plenary jurisdiction and while the terms were in effect. Finally, the trial court correctly denied Appellant's motion to suppress the evidence regarding his January 14 intoxication because the encounter was consensual and, thus, did not implicate the Fourth Amendment. We affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

---

unpersuasive. *See Woodard*, 341 S.W.3d at 413 (holding officer did not need specific information from anonymous tip because stop and inquiry were consensual).

[10]Even if the encounter was not consensual, the evidence shows articulable facts supporting reasonable suspicion to justify a detention. *See Derichsweiler v. State*, 348 S.W.3d 906, 909–12, 916–17 (Tex. Crim. App.), *cert. denied*, 132 S. Ct. 150 (2011).

19

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  August 22, 2013