**Robert Anthony WARDEN, Appellant**

v.

**The STATE of Texas, Appellee**

**No. 04-16-00099-CR**

Court of Appeals of Texas, San Antonio.

Delivered and Filed: May 17, 2017

Discretionary Review Refused November 15, 2017

Gregory Sherwood, Austin, for Appellant.

Z. Heather McMinn, Christopher M. Eaton, for Appellee.

Sitting: Rebeca C. Martinez, Justice, Patricia O. Alvarez, Justice, Luz Elena D. Chapa, Justice

## OPINION

Opinion by: Patricia O. Alvarez, Justice

A Guadalupe County jury found Appellant Robert Anthony Warden guilty of felony tampering with physical evidence. It also found two enhancement paragraphs true and sentenced Warden to twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Warden contends the trial court erred in denying his motion to suppress evidence because Warden was detained before he was patted down and the officers did not have sufficiently particularized facts to reasonably suspect Warden of committing a crime. Because we conclude the encounter between Warden and the officers was consensual, we affirm the trial court's judgment.

### Factual and Procedural Background

The only issue on appeal pertains to the trial court's ruling on the motion to suppress; we therefore limit our recitation of the facts to that portion of the testimony.

On January 26, 2013, Guadalupe County Sheriff's Deputy Thomas Jones was en route to a disturbance call when he saw a

red passenger car and a black SUV pulling a trailer "running through a field—well, driving through a field." Both vehicles were driving "[f]rom behind a house back around into a field coming back around like they were leaving from the backside of the house." The two vehicles changed directions when they saw law enforcement, and the vehicles returned to the house. Deputy Jones noted the behavior was suspicious, especially in light of his knowledge of several recent burglaries in the area and his familiarity with the property itself. The property belonged to Kenneth Lenz, a known drug-user who was recently released from the penitentiary.

Deputy Jones testified that he pulled behind the two vehicles. The red passenger car was approximately ten to fifteen feet in front of him and stopped at a closed gate. Appellant Robert Warden exited the vehicle, "hopped over the fence into the yard," and proceeded to walk to Lenz's residence. Simultaneously, Sergeant John Batey also pulled onto the property behind Deputy Jones's vehicle. Sergeant Batey also testified that he thought it was "odd for vehicles to be driving through a field midday, coming out from behind the brush line." The testimony was uncontroverted that it was daylight at the time of the incident, Warden was free to move around behind the gate, and the officers did not activate their vehicles' lights or sirens, did not draw their weapons, did not direct or order Warden's movements, and did not tell Warden to stop.

Warden's girlfriend, Natasha Zelek, was in the front passenger seat of the red vehicle. She testified that the patrol vehicle was blocking the path that she and Warden intended to use to exit the property. Both officers, however, testified there was ample room for the red vehicle to back up and leave. In fact, Deputy Jones averred that nothing was blocking the red

vehicle from driving "through the same field that it drove into, that it came from."

The officers both described Warden walking to Lenz's residence and talking to Lenz for several minutes. Both Warden and Lenz then returned to speak to the officers. Neither officer told Warden he was not free to leave or that he had to talk to the officers. Both Warden and Lenz were on the other side of the fence from the officers during their conversation with officers Jones and Batey. The officers explained that they were investigating burglaries in the area and wanted to know what "they dumped" behind the house. Lenz explained that Warden and the others had permission to be on his property and to dump "whatever" on his property. Lenz then gave the officers permission to "go back there and look."

Deputy Jones inquired whether someone would "show me how to get back there," and Warden volunteered. Warden walked through the gate and over to Deputy Jones's patrol vehicle. Deputy Jones explained that when an individual is placed in an officer's vehicle, a pat-down search is conducted for officer safety reasons. Deputy Jones was conducting a pat-down search of Warden when the officer felt something in the front pocket of Warden's jacket. The officer "asked [Warden] what it was. [Warden] looked, he closed it, and then he went for it." Deputy Jones testified that Warden pulled out a "syringe with an orange tip on it" and "poked the lid and shot all the liquid on the [ground]." The officer further testified that Warden was holding the syringe in a fist "as he was coming at me. That's why I drew my duty weapon." Warden was restrained and placed under arrest for tampering with evidence.

Warden was subsequently charged by indictment with tampering with physical evidence by intentionally and knowingly altering and destroying a syringe contain-

ing methamphetamine. The State filed notice of its intent to enhance Warden's punishment with two prior felony convictions. Warden filed a motion to suppress all physical evidence and oral statements obtained pursuant to what Warden alleged was an illegal detention. During the September 3, 2014 motion to suppress hearing, Deputy Jones, Sergeant Batey, and Zelek testified, and the trial court admitted two video-recordings: one taken from a camera on Sergeant Batey's body, and the other from a camera mounted on the dashboard of Deputy Jones's vehicle. At the conclusion of the testimony, and after argument of counsel, the trial court recessed the proceedings and took the matter under advisement.

On February 13, 2015, the trial court entered findings of fact and the following conclusions of law:

1. Based on the foregoing facts, and in view of all the circumstances, the Court finds that during the investigation leading to Defendant's arrest, a reasonable person in Defendant's position would have believed that he was free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Therefore, during the investigation Defendant was not detained. The encounter was therefore one of a voluntary nature until the moment when Defendant was placed under arrest.

2. Alternatively, in the event that during the investigation leading to his arrest Defendant was detained, the Court finds that the investigative detention was reasonable and based on adequate reasonable suspicion. *Gurrola v. State*, 877 S.W.2d 300, 302 (Tex. Cr. App. 1994). In other words, the detaining officers were able to provide sufficient articulable facts or

rational inferences to support the detention in this case. *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Cr. App. 1997). Furthermore, the investigative detention in this case was temporary and lasted no longer than was necessary to effectuate its purpose. *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

The trial court denied Warden's motion to dismiss.

The case was called for trial on January 4, 2016. On January 5, 2016, having found Warden guilty of tampering with physical evidence, the jury found Warden's two prior felony enhancements true, and sentenced Warden to twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal ensued.

## MOTION TO SUPPRESS

### A. Standard of Review

▮ An appellate court reviews a trial court's ruling on a motion to suppress using a bifurcated standard of review; we " 'afford almost total deference to a trial court's determination of the historical facts that the record supports.' " *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *accord Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). A reviewing court must

give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. But when application-of-law-to-fact questions do not

turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.

*Wilson v. State*, 442 S.W.3d 779, 783 (Tex. App.—Fort Worth 2014, pet. ref'd) (citations omitted); *see also Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004).

## B. Arguments of the Parties

Warden contends the trial court's conclusion that his encounter with the officers was consensual was incorrect. While conceding the officers did not display their weapons, use a commanding tone of voice, or tell Warden that he was not free to leave, Warden contends their patrol vehicles were parked behind his vehicle and he could not easily leave the property. Warden also argues the officers did not sufficiently articulate facts justifying reasonable suspicion to detain Warden during their investigation.

## C. Interactions between Police Officers and Citizens

"The Fourth Amendment protects individuals against unreasonable searches and seizures." *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011) (citing U.S. Const. amend. IV). Importantly, however, simply because an officer and a person converse, that interaction does not necessarily invoke the Fourth Amendment. *See Weaver*, 349 S.W.3d at 525. Our analysis, therefore, begins with a determination of whether Warden met his initial burden to produce some evidence that the police conducted a search or seizure without a warrant. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Only then does the burden shift to the State to establish that the warrantless search was reasonable. *Id.*

The Texas Court of Criminal Appeals addressed the interactions between officers and private citizens in *State v. Garcia-Cantu*; the court stated that "[e]ach citizen-police encounter must be factually evaluated on its own terms; there are no per se rules." *State v. Garcia–Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008). "The Supreme Court has determined that there are three distinct types of interactions between police and citizens: (1) consensual encounters, which require no objective justification; (2) investigative detentions, which require reasonable suspicion; and (3) arrests, which require probable cause." *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011) (footnotes omitted); *accord Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). "[A consensual] encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers." *Crain*, 315 S.W.3d at 49. When a person voluntarily consents to a search, an exception to the Fourth Amendment's general prohibition on warrantless searches exists. *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012); *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011).

"These encounters [remain] consensual so long as a reasonable person would feel free 'to disregard the police and go about his business.'" *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)); *see Castleberry*, 332 S.W.3d at 466. "Even if the officer did not tell the citizen that the request for identification or information may be ignored, the fact that the citizen complied with the request does not negate the consensual nature of the encounter." *Castleberry*, 332 S.W.3d at 466; *accord Crain*, 315 S.W.3d at 49–50 (giving

"[e]xamples of circumstances that might indicate a seizure [such as] the *threatening* presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the *use of language or tone of voice* indicating that compliance with the officer's request might be compelled" (first emphasis added) (quoting *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870)). Based on the totality of the circumstances, *Castleberry*, 332 S.W.3d at 466, when the evidence supports a consensual encounter, there is no Fourth Amendment seizure as a matter of law, *State v. Woodard*, 341 S.W.3d 404, 413 (Tex. Crim. App. 2011) ("In the absence of . . . evidence [typically associated with the seizure of a person—like the display of a weapon, physical touching, or the threatening presence of several officers], otherwise offensive contact between a member of the public and police cannot, as a matter of law, amount to a seizure of that person." (alterations in original) (quoting *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870)).

### D. Analysis

██ In this case, there was no evidence that the officers used flashing lights or sirens. By all accounts, the exchange between the officers and Warden was congenial, without the officers' use of any threatening presence, physical touching, or authoritative vocal tone or gesture. *See Crain*, 315 S.W.3d at 49–50. The testimony clearly supports that the officers did not display a weapon, did not give Warden any orders or directions, and were on the opposite side of a fence from Warden during their conversations with him. *See id.*

Although Zelek testified the officers were blocking the path that she and Warden intended to use to exit the property, there was significant evidence countering her testimony. Both Deputy Jones and Sergeant Batey testified there was ample room for Warden's vehicle to back out and use an alternate road to exit. More importantly, however, Warden was not in the vehicle during the verbal exchange with the officers. Without objection from the officers, Warden "hopped over the fence" into Lenz's yard; he was on the other side of the gate. Only after Warden walked to Lenz's house, spoke to Lenz, and returned to the gate with Lenz, did Warden speak to the officers.

During the conversation between Warden, Lenz, and the officers, Lenz provided his permission for officers to inspect his property. The testimony is undisputed that Warden volunteered to ride with Deputy Jones to show the officer how "to get to the back" of the property. Warden voluntarily walked through the gate to ride with Deputy Jones. Out of precaution, and for the officer's safety, Deputy Jones conducted a pat down of Warden. At no time did Warden change his mind or tell the officer that he did not want to ride in the officer's vehicle. It was during the pat-down search that the officer felt something in Warden's jacket pocket, and Warden reacted. He drew the syringe from his pocket, expelled the fluid on the ground, held the syringe in his fist, and moved towards Officer Jones. Only then did Officer Jones draw his weapon.

As the sole trier of fact and judge of credibility, the trial court was free to believe or disbelieve all or any of the witnesses' testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *see also Castleberry*, 332 S.W.3d at 465 (reiterating that the trial court is afforded almost total deference on findings of fact as long as they are supported by the record). Based on the evidence, we cannot say the trial court abused its discretion in determining that the encounter between Warden and the officers was a consensual encounter. Accordingly, we conclude War-

den failed to meet his initial burden to show that there had been a seizure. *See Woodard*, 341 S.W.3d at 413.

Because the encounter was consensual, we need not address whether the officers had reasonable suspicion to justify an investigative detention.

### CONCLUSION

Based on a totality of the circumstances, we conclude the exchange between Warden and the officers was a consensual encounter that did not trigger Fourth Amendment protections. Therefore, we affirm the trial court's judgment.