

**NUMBER 13-16-00024-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**LAMARCOS RASHUN LIGGINS,**                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                               **Appellee.**

---

### On appeal from the 278th District Court
### of Walker County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Contreras, and Benavides**
**Memorandum Opinion by Justice Contreras**

Appellant, Lamarcos Rashun Liggins, was charged with burglary of a habitation,

with an enhancement paragraph, a second-degree felony offense.  *See* TEX. PENAL CODE

ANN. § 30.02(a), (c)(2) (West, Westlaw through Ch. 49, 2017 R.S).[1]  After the trial court denied his motion to suppress evidence, a jury found him guilty, and the trial court sentenced him to twenty years' imprisonment.  By a single issue, appellant contends the trial court erred in denying his motion to suppress.  We affirm.

## I. BACKGROUND[2]

Appellant contends the trial court erred in denying his motion to suppress evidence—allegedly stolen property found in his vehicle—because:  (1) there was no reasonable suspicion to justify the stop of his vehicle; and (2) the warrantless search of his vehicle was illegal.  At the motion to suppress hearing, several Huntsville Police Department officers who were involved in the surveillance of appellant and/or his arrest testified.  Three female students who shared an apartment testified that their apartment was burglarized and that some of their property was stolen and recovered from appellant's vehicle.

Officer Scott Bennett testified that in March 2014, appellant was released from jail. Appellant had been convicted of and was incarcerated for several burglaries in the Huntsville area.  The burglaries had similar fact patterns:  entry into an apartment through an unlocked door, in the early morning hours between midnight and dawn, and theft of electronic equipment.  During the nine months of appellant's incarceration, no burglaries fitting the fact pattern occurred.  About a week after appellant was released, similar

---

[1] We note that section 30.02 has been amended, effective September 1, 2017.  The amendments are not pertinent here, and we cite to the current version of the statute.  *See* TEX. PENAL CODE ANN. § 30.02(a), (c)(2) (West, Westlaw through Ch. 49, 2017 R.S.).

[2] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to an order issued by the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through Ch. 49, 2017 R.S.).

burglaries began occurring "left and right." Officer Bennett testified that the Huntsville Police Department decided to place appellant under surveillance.

In the early morning hours of March 28, 2014, Officer Bennett and several other participating officers observed appellant leave his girlfriend's apartment, where he resided outside of Huntsville, and drive to Huntsville. Appellant drove into the Cornerstone Apartment complex and parked. After several minutes, appellant drove to the other side of the complex, near a wooded area, and parked. Appellant entered the complex between the woods and the apartments. After approximately fifteen minutes, appellant returned to his vehicle carrying a very large object resembling a television screen. He placed the object in the vehicle. Appellant returned to the apartments and came back carrying several other items, which he placed in the vehicle.

Appellant next drove to the Montgomery Village Apartments, located adjacent to the Cornerstone complex. After about fifteen minutes, appellant left the Montgomery Apartments. He next drove to the Bearkat Village dormitory, a resident hall associated with Sam Houston State University. After approximately fifteen minutes, appellant ran to his car, "jumped in," and "took off." Officer Bennett contacted Officer Jeremy Carroll and asked Officer Carroll to conduct an investigatory stop of appellant's vehicle. When Officer Bennett reached the location where Officer Carroll had stopped appellant, Officer Carroll was questioning appellant outside his vehicle. Officer Bennett observed a large flat-screen television screen in plain view in appellant's vehicle. Officer Bennett also observed, in plain view, a box containing a laptop and a video game remote on the front passenger-side floorboard of the vehicle. According to Officer Bennett, Officer Carroll had detained appellant at that point.

3

Detective David Johnson of the Huntsville Police Department testified that he and Detective Kevin Hammond began following appellant's vehicle when he left his girlfriend's residence and drove into Huntsville around 1:50 a.m. Detective Johnson observed appellant at the Cornerstone complex, the Montgomery Apartments, and at the Bearkat Village dormitory. Detective Johnson testified that he believed that reasonable suspicion existed to detain appellant for investigative purposes. Detective Johnson based his belief on appellant's suspicious behavior of driving into several apartment complexes where he did not live for short periods of time in the early morning hours, combined with the fact that he was observed carrying items from one of the apartments and was observed running from the dormitory.

Officer Carroll testified that he initiated the traffic stop of appellant's vehicle. Officer Carroll placed appellant in wrist restraints because appellant had not stopped his vehicle right away and because of appellant's nervous demeanor. While appellant was being detained, Officer Carroll heard a radio broadcast that a burglary had occurred at Bearkat Village. Officer Carroll testified that the officers were able to determine that the laptop recovered from appellant's vehicle belonged to Sarah Potts. Several officers were sent to Potts's address to speak to her. Potts lived in the Cornerstone Apartment complex. On cross-examination, Officer Carroll confirmed that no one read appellant's rights to him.

Potts and her two female roommates at the Cornerstone Apartments testified. They identified the flat-screen TV, the laptop, and the video console remote as property that was taken from their apartment that night.

The trial court denied appellant's motion to suppress.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

4

In reviewing a trial court's ruling on a motion to suppress, appellate courts must view all of the evidence in the light most favorable to the trial court's ruling. When the trial court does not make explicit findings of fact, the appellate court infers the necessary factual findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied fact findings. Thus, we afford almost total deference to a trial judge's determination of the historical facts that the record supports, especially when his implicit factfinding is based on an evaluation of credibility and demeanor. This same highly deferential standard applies regardless of whether the trial court has granted or denied a motion to suppress evidence. Thus, the party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.

*State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) (citations omitted).

"The Supreme Court has determined that there are three distinct types of interactions between police and citizens: (1) consensual encounters, which require no objective justification; (2) investigatory detentions, which require reasonable suspicion; and (3) arrests, which require probable cause." *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011); *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011).

To justify an investigative detention—the type of encounter at issue here—an officer must have "reasonable suspicion that the citizen is, has been, or soon will be, engaged in criminal activity." *Woodard*, 341 S.W.3d at 411. "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler v. State,* 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). The test for reasonable suspicion focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent. *See Abney v. State,* 394 S.W.3d 542, 550 (Tex. Crim. App.

5

2013) ("[A]n officer's mistake about the legal significance of facts, even if made in good faith, cannot provide probable cause or reasonable suspicion.").

The Fourth Amendment to the United States Constitution provides, in part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. As a general rule, searches conducted without a warrant are deemed unreasonable unless the situation presents an exception to the warrant requirement. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). One such exception is the *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 29 (1968). Consistent with *Terry*, a police officer may stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of "probable cause." 392 U.S. at 29; *see Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). A determination of reasonable suspicion is made by considering the totality of the circumstances. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007).

### III. DISCUSSION

Here, it is undisputed that the officers stopped appellant's vehicle for the purpose of conducting an investigatory detention. Thus, to justify the investigatory detention, the officers were required to have "reasonable suspicion" that appellant, was, had been, or soon would be, engaged in criminal activity. *See Derichsweiler*, 348 S.W.3d at 914. We conclude that the officers had such reasonable suspicion. The record reflects the following: (1) appellant was under surveillance because he was suspected of committing numerous recent burglaries, all of which were similar in circumstances to burglaries

6

appellant had been convicted of—theft of electronic equipment taken from unlocked apartments in the early morning hours; (2) burglaries fitting this pattern ceased while appellant was incarcerated and resumed about a week after he was released; (3) appellant was observed leaving his residence around 1:50 a.m. and driving into Huntsville; (4) appellant drove to two apartment complexes and one dormitory, staying only for approximately fifteen minutes in each location; (5) at one complex, appellant parked, then drove to the other side of the complex, which was a more secluded area, and parked; (6) appellant emerged from the apartment area in one complex carrying a large item resembling a large flat-screen television and some additional items, which he placed in his vehicle; and (7) after being at the dormitory for about ten minutes, appellant was observed sprinting to his vehicle and left hurriedly. These circumstances constituted articulable facts from which a reasonable officer could reasonably infer that appellant was or had been engaged in illegal conduct. *See Garcia*, 43 S.W.3d at 530.

Considering the totality of the circumstances, *see Castro*, 227 S.W.3d at 741, we conclude that the trial court did not err in determining that the stop and investigatory detention of appellant were supported by reasonable suspicion. *See Derichsweiler*, 348 S.W.3d at 914. The trial court did not err in denying appellant's motion to suppress, and we overrule his sole issue.[3]

## IV. CONCLUSION

---

[3] We note that appellant's motion to suppress complained of the stop of his vehicle and the warrantless search of his vehicle. Appellant's brief, however, argues only that the officers lacked reasonable suspicion to justify the stop. He does not separately argue or cite to any authority regarding the alleged illegality of the search of his vehicle. Accordingly, to the extent that appellant complains of an allegedly illegal search, such argument is inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

We affirm the trial court's judgment.

DORI CONTRERAS
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
27th day of July, 2017.