

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00191-CR

RUBEN VASQUEZ III, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 71,778-E, Honorable Douglas R. Woodburn, Presiding

March 26, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

On his open plea of guilty to the bench, appellant Ruben Vasquez III was convicted of the second-degree felony offense of possession of more than four grams but less than 200 grams of methamphetamine[1] and sentenced to fifteen years of imprisonment.[2] Appellant challenges the trial court's denial of his motion to suppress. We will affirm.

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2018).

[2] TEX. PENAL CODE ANN. § 12.33 (West 2018) (second-degree felonies are punishable by imprisonment for any term of not more than 20 years or less than 2 years

## Background

The trial court held a hearing on appellant's pretrial motion to suppress evidence, during which it heard the testimony of a Potter County deputy sheriff and viewed a portion of the recording from the deputy's patrol vehicle camera. The deputy testified he was notified by dispatch of a reckless driver, eastbound on Interstate 40. An unidentified caller reported a black Dodge Charger occupied by a male and a female, and indicated the couple might have been arguing or fighting.

As the deputy was driving westbound on the interstate, he saw an eastbound vehicle matching the description, occupied by a male and a female. He crossed over to the other side of the interstate shortly after seeing the car and followed it as the driver took an exit off the highway and turned into a convenience store. The video demonstrates traffic was light at the time.

The deputy told the court the Charger stopped at one of the gas pumps and appellant left the driver's seat. The deputy testified he saw him "immediately walk around the front of the vehicle, towards the passenger side of the vehicle." He "seemed somewhat agitated" and he "slammed the door." The deputy told the court he pulled his patrol vehicle in front of appellant's car and "parked in front of him facing him." Appellant "slammed the passenger door" as the deputy pulled up. He saw appellant open the passenger side door again and then "acted as if he was going to walk away from the vehicle." As the deputy got out of his car, appellant "turned and walked back towards it,

_____

and a fine not to exceed $10,000). Appellant pled "true" to the enhancement allegation set out in the indictment.

opened up the passenger door again." The deputy told the court he saw the passenger's seat was "leaned back as if somebody was in it laying down." He could see what he believed "was a female passenger in the front seat, covering her face, as if she had been crying or was upset."

The deputy told the court he asked appellant "what was going on"[3] and asked him to "step over towards" him while he motioned appellant to come to him. The video depicts the deputy asking his question in a conversational tone and using a casual motion to beckon appellant toward him. The video also shows that at that time, appellant was already walking in the deputy's direction. The deputy testified he asked appellant "to step back towards me, to talk—to me just due to being dispatched on a reckless driver; the vehicle matched the descriptions, due to the speeds; also the caller believed that, you know, that the occupants were possibly arguing or fighting. He appeared upset; it was a male driver. I then observed the female passenger; she appeared to be upset. Slamming the doors. It was starting to add up to me that I had located the vehicle I was being dispatched on."

The deputy further testified he and appellant spoke between the patrol car and appellant's car.[4] The deputy asked for appellant's identification and told him "my reasoning in . . . making contact with him, was that I was dispatched on a reckless driver traveling eastbound on I-40 in a black Dodge Charger." Appellant provided his Texas

---

[3] The video reflects the deputy asked appellant, "What's going on?"

[4] The quotations from this conversation come from the deputy's hearing testimony. The video reflects bits of the conversation, but parts are distorted and others are inaudible.

Identification card. The deputy testified appellant told him he and his wife were on their way back to Austin when they began to argue. Appellant also told the deputy that at "one point" he made his wife "exit the vehicle." But, "he realized he couldn't leave her out there on the side of the road, due to being so far away from home, so he went back to pick her up."

The deputy spoke with appellant's wife also. While he was doing so, he received information that neither appellant nor his wife had a valid driver's license. Because appellant had been driving the vehicle without a valid license, the deputy decided to place appellant under arrest. When he searched appellant's person, the deputy found the packet of white crystal substance that led to appellant's prosecution. He also found $3100 in appellant's left front pocket. Other contraband was found in the Charger during its subsequent search.

After the court denied appellant's motion to suppress, appellant entered an open plea of guilty to the court. The court held a punishment hearing after which it assessed punishment as noted.

Analysis

By his issue on appeal, appellant contends the trial court erred in denying his motion to suppress because, he argues, the deputy initially lacked reasonable suspicion to detain him.

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (citation omitted). Where, as here, no findings of fact were requested or filed, we view the evidence in the light most

4

favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000) (citation omitted). We will uphold the trial court's decision if it is correct on any theory of law applicable to the case. *Armendariz v. State,* 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (citing *Ross,* 32 S.W.3d at 856).

Not every encounter between a citizen and a police officer implicates the Fourth Amendment. *Florida v. Bostick,* 501 U.S. 429, 434 (1991) (citation omitted). There are three types of police-citizen interactions. *Wade v. State,* 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). Those include: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration, which must be supported by a reasonable suspicion of criminal activity; and (3) arrests, which are constitutional only if supported by probable cause. *Id.* (citations omitted).

A consensual encounter is one in which an officer "approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers." *Crain v. State,* 315 S.W.3d 43, 49 (Tex. Crim. App. 2010) (citation omitted). Police officers are free to approach citizens to ask for information or cooperation. *Wade,* 422 S.W.3d at 667 (citation omitted). And, during such an encounter, may request identification. *See State v. Castleberry,* 332 S.W.3d 460, 468 (Tex. Crim. App. 2011); *Finley v. State,* No. 05-12-01217-CR, 2013 Tex. App. LEXIS 9767, at *21-24 (Tex. App.—Dallas Aug. 5, 2013, no pet.) (mem. op., not designated for publication) (identification requested during consensual encounters). While such "consensual encounters may be uncomfortable for

a citizen," they are "not Fourth Amendment seizures." *Wade,* 422 S.W.3d at 667 (citation omitted).

As long as a citizen feels that he is free to disregard the officer and leave, the Fourth Amendment is not implicated. *Bostick,* 501 U.S. at 434 (citation omitted). It is only when the officer makes a display of official authority with the implication that the authority cannot be "ignored, avoided, or terminated" that the encounter becomes a Fourth Amendment seizure. *State v. Garcia-Cantu,* 253 S.W.3d 236, 243 (Tex. Crim. App. 2008). To determine whether interaction between citizen and officer has reached the level of an investigative detention, courts take into account the totality of the circumstances to decide whether a reasonable person would have felt free to ignore the officer's request or terminate their encounter. *Wade*, 422 S.W.3d at 667 (citations omitted). Among circumstances that might convey a message that compliance with the officer's request was required are "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Crain,* 315 S.W.3d at 49-50 (citing *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)).

The parties do not dispute that the interaction between the deputy and appellant became an investigatory detention at some point. They dispute when that occurred. Appellant argues the interaction was a detention from the outset, when the deputy pulled his vehicle in front of the Charger at the gas pump, exited the vehicle, asked appellant

6

"what's going on?" and gestured to him with a statement.[5] The State argues the initial contact between appellant and the deputy was a consensual encounter, not evolving into an investigatory detention until later. Based on the record before us, we agree with the State that their encounter began as consensual.[6]

Consensual encounters do not require any justification on the officer's part and an officer may initiate such an encounter "without reasonable suspicion" of criminal activity. *Castleberry,* 332 S.W.3d at 466; *State v. Woodard,* 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). And, an officer "may be as aggressive as the pushy Fuller-brush man at the front door, the insistent panhandler on the street, or the grimacing street-corner car-window squeegee man." *Garcia-Cantu,* 253 S.W.3d at 243. The person approached, however, "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." *Florida v. Royer,* 460 U.S. 491, 497-98 (1983). *See also Castleberry,* 332 S.W.3d at 466 ("a citizen is free to terminate a consensual encounter at will"). Further, the fact that the citizen complied with a request of the officer "does not negate the consensual nature of the encounter." *Castleberry,* 332 S.W.3d at 466 (citation omitted).

---

[5] As noted, the deputy testified he asked appellant to "step over towards me." Appellant's brief states the deputy told appellant "come over here." The statements are similar, but we do not agree the record shows the deputy directed appellant to "come over here."

[6] The State also argues the deputy was properly performing his community caretaking function. Given our disposition of appellant's issue, we need not address that contention.

7

The totality of the circumstances includes those that the encounter occurred in broad daylight at a convenience store just off the interstate highway,[7] appellant had stopped his car at the gas pump and exited the car before the encounter began, the deputy was the only officer present, he did not display a weapon, and he parked in a manner in which appellant, had he chosen to, could have re-entered his vehicle and driven off. Or, appellant as easily could have turned and walked into the convenience store rather than approaching the deputy. As we have noted, the deputy's question, "what's going on?", and his statement, accompanied by his gesture beckoning appellant toward him, were stated in a tone and manner that the trial court could have considered non-demanding.

The circumstances here are readily distinguished from those present in *Crain,* 315 S.W.3d at 51-52, in which an officer, in the dark of the night, shined his patrol car's spotlight on a pedestrian walking across a residential yard and called out from the car, "Come over here and talk to me" before approaching the pedestrian on foot. *Id.* at 51. Characterizing the officer's words as a "request-that-sounded-like-an-order," the court concluded a reasonable person in the pedestrian's shoes would not have felt free to leave or decline the officer's requests. *Id.* at 52. Accordingly, the pedestrian was detained at that point. *Id.*

In his appellate brief, appellant raises the contention that the patrol car's emergency lights were flashing as the deputy encountered appellant. Having reviewed

---

[7] *See Castleberry,* 332 S.W.3d at 468 (noting court has explained a "reasonable person would feel freer to terminate or ignore a police encounter in the middle of the day in a public place where other people are nearby than he would when parked on a deserted, dead-end street at 4:00 a.m.") (quoting *Garcia-Cantu,* 253 S.W.3d at 245 n.42).

the entire record and given close attention to the video recording, we agree with the State's response that, "[w]hether the overhead lights were on or not was not developed on the record. No indication of pulsating lights is detected on the video recording." We find in the hearing record no discussion of whether the patrol car's lights were on when the deputy made contact with appellant. Reviewing the trial court's ruling on the motion to suppress, we follow the general rule that only evidence adduced at the motion's hearing is considered. *Peddicord v. State,* 942 S.W.2d 100, 108 (Tex. App.—Amarillo 1997, no pet.). And we must view that evidence in the light most favorable to the court's ruling. *Ross*, 32 S.W.3d at 855-56. Doing so, we cannot agree that the evidence shows appellant was faced with flashing emergency lights as he encountered the deputy.

We find the circumstances presented in the record do not reflect a display of authority by the deputy that could not be "ignored, avoided, or terminated." *Garcia-Cantu,* 253 S.W.3d at 243. On the contrary, we find a reasonable person in appellant's shoes would have felt free to disregard the officer's approach and words, and go about his business. *Castleberry,* 332 S.W.3d at 468; *Wade*, 422 S.W.3d at 667-68; *Finley,* 2013 Tex. App. LEXIS 9767, at *21-24. For those reasons, we resolve appellant's sole issue against him.

Conclusion

Having overruled appellant's issue, we affirm the judgment of the trial court.


James T. Campbell
Justice

Do not publish.

9