**Opinion issued June 15, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00571-CR

———————————

## JASON BOATWRIGHT, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 178th District Court
Harris County, Texas
Trial Court Case No. 1667445

## MEMORANDUM OPINION

After the trial court denied his motion to suppress evidence, appellant Jason Boatwright pleaded guilty to possession of a controlled substance, namely more than 4 but less than 200 grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE § 481.115. He was placed on deferred adjudication community supervision

for three years. Boatwright appeals the trial court's denial of his motion to suppress evidence. We affirm.

## Background

Boatwright was charged with possession of a controlled substance after an officer searched his car and found 30 grams of methamphetamine. Boatwright moved to suppress all evidence seized from his vehicle. The court held a hearing where each side called one witness.

### A.    Officer D. Thompson

Officer D. Thompson of the Humble Police Department testified that in March 2020, he was dispatched to Planet Ford. At the time, he was assigned to collision reconstruction in the traffic division of the police department. Officer Thompson was dispatched to the car dealership after an accident in the service department. He learned that a minivan had struck a mechanic and pinned him against the wall.

When Officer Thompson arrived at the dealership, he encountered Boatwright, who had been driving the van. The minivan had been configured without a front driver's seat. It had an apparatus for braking and accelerating that used a metal rod connected to the brake pedal. When Officer Thompson arrived, there was a chair in the van where the typical driving seat would have been. Officer Thompson learned that Boatwright had been attempting to drive the van

2

onto a lift when his foot slipped off the brake and pinned another employee between the vehicle and a wall. The employee had been transported to the hospital by the time Officer Thompson arrived.

Officer Thompson spoke with Boatwright. He asked Boatwright if he had been taking any prescription medication. Officer Thompson stated that he was gauging if Boatwright was intoxicated at the time of the accident. Boatwright attempted to tell the officer the names of his medications, but he was unable to do so. He could not spell the medications either. Boatwright told the officer that the medications were in his personal vehicle and offered to show them to the officer.

Officer Thompson followed Boatwright to his personal vehicle, which was on the other side of the dealership. Boatwright unlocked his car and opened the driver's side door. Officer Thompson remained outside the car and observed Boatwright opening the middle console, revealing three pill bottles. Boatwright removed two of the three pill bottles and handed them to the officer. One of the bottles contained three different types of pills. Officer Thompson asked Boatwright about the different pills, and Boatwright informed the officer that he had a prescription for them on another pill bottle. When the officer asked to see the prescription, Boatwright went back inside his vehicle. Officer Thompson thought that Boatwright would retrieve the third pill bottle. Instead, Boatwright exited his vehicle without the third bottle.

Officer Thompson testified that Boatwright's demeanor changed. Boatwright became upset and angry and tried to change the subject. Boatwright asked the officer if he had a search warrant. When Officer Thompson stated that he did not and asked if he needed one, Boatwright told the officer, "No."

Boatwright went back into his vehicle again. This time, Officer Thompson could see that Boatwright had his hand on the third pill bottle and was positioning his lower body in such a way to attempt to block the officer's view of what he was doing. Officer Thompson became nervous due to Boatwright's sudden change in behavior and furtive movements. Officer Thompson believed that Boatwright was either attempting to destroy evidence or to obtain a weapon. Officer Thompson quickly ordered Boatwright to step out of his vehicle and step back. Boatwright did not do so. When Boatwright refused the officer's verbal command, Officer Thompson reached into the vehicle and grabbed Boatwright by his shirt and pulled him out. Officer Thompson was afraid for his safety and paid close attention to Boatwright's hands. As Boatwright was pulled out of the car, his hand released the third pill bottle. Sticking out of the pill bottle was a "nugget" of marijuana. Officer Thompson then opened a shave kit that was in the front passenger seat. Inside, he found approximately 30 grams of methamphetamine.

**B.     Daniel Mehler**

Daniel Mehler testified for the defense. He stated that he is a cannabis scientist. He has a master's degree in cannabis science from the University of Maryland School of Pharmacy. He researches the pharmacology of cannabis and its potential therapeutic benefits. He also stated that he is a defense attorney who focuses on cannabis cases. Mehler testified that marijuana, as commonly thought of, has a tetrahydrocannabinol ("THC") content greater than .3 percent, while hemp has a THC content less than .3 percent. He testified that there is no visual distinction between marijuana and hemp. He also stated that he had not tested the marijuana found on the day of the incident, and therefore he had no way to opine if it was hemp or marijuana found in Boatwright's car.

The trial court denied Boatwright's motion, and he appealed.

**Motion to Suppress**

Boatwright argues that the trial court erred in denying his motion to suppress evidence. He argues that he was detained without reasonable suspicion when Officer Thompson forcibly removed him from his car, that the officer did not have probable cause to search his car because the sight of cannabis no longer supports probable cause, and that the officer unreasonably prolonged the detention.

5

## A. Standard of Review

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In doing so, we apply a bifurcated standard of review, giving almost total deference to the trial court's determination of historic facts and mixed questions of law and fact that rely upon witness credibility, but reviewing de novo pure questions of law and mixed questions of law and fact that do not require credibility determinations. *Id.* at 923. If, as in this case, the trial court does not make explicit findings of facts, we review the evidence in the light most favorable to the court's ruling, assuming the court made implicit findings supported by the record. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). The trial court may choose to believe or disbelieve any or all of a witness's testimony. *Smith v. State*, 236 S.W.3d 282, 289 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). We may uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

## B. Applicable Law

There are three types of interactions between police officers and citizens: (1) consensual encounters, (2) investigative detentions, and (3) arrests. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). An officer may initiate

a consensual encounter with a person without any objective justification, and the person is free to terminate the encounter. *Id.* (stating an officer is free to stop and question a person, and without reasonable suspicion, request the person's identification and information). An officer may conduct an investigative detention if the detention is justified by reasonable suspicion. *Johnson v. State*, 622 S.W.3d 378, 384 (Tex. 2021); *State v. Kerwick*, 393 S.W.3d 270, 273–74 (Tex. Crim. App. 2013). "Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Kerwick*, 393 S.W.3d at 274. "The articulable facts need only show 'that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity is related to crime.'" *Johnson*, 622 S.W.3d at 384 (quoting *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011)).

We review de novo "[w]hether the facts known to the officer at the time of the detention amount to reasonable suspicion." *Kerwick*, 393 S.W.3d at 273. An "officer can draw on his own experience and specialized training." *Johnson*, 622 S.W.3d at 385. The test for reasonable suspicion is objective, disregarding the officer's subjective intent. *Kerwick*, 393 S.W.3d at 274. We review the trial court's

7

determination regarding reasonable suspicion by looking at a totality of the circumstances. *Id.*

## C.     Reasonable Suspicion to Detain

Boatwright asserts that his furtive gestures alone were not sufficient to detain him by pulling him from the car, but furtive gestures were not the only facts known to Officer Thompson when he detained Boatwright. Officer Thompson was on the scene after a van driven by Boatwright hit a mechanic. Boatwright's speech and behavior were erratic. Boatwright struggled to communicate the names of his medicines. When Boatwright blocked the officer's view into the car and its center console with his body, he refused to exit the car. He was exhibiting nervous and evasive behavior. Officer Thompson testified that Boatwright's behavior and movements made him nervous that Boatwright was armed or was destroying evidence.

The standard for reasonable suspicion considers the totality of the circumstances. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968) ("[Law enforcement officer] observed [co-defendants] go through a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation."). Officer Thompson could have reasonably inferred from Boatwright's actions that criminal activity out of the ordinary related to Boatwright had occurred. *See Johnson*, 622 S.W.3d at 884. Officer Thompson could have reasonably believed

8

that Boatwright had been driving the van while under the influence, was attempting to conceal illegal activity, or that he was armed. Considering the totality of the circumstances viewed in the light most favorable to the trial court's ruling, detaining Boatwright by pulling him out of his car was supported by reasonable suspicion. *Kerwick*, 393 S.W.3d at 274.

**D.    Search of the Car**

Boatwright next argues that the search of his car, specifically the search of his shaving kit, was not supported by reasonable suspicion or probable cause.

**1.    Reasonable Suspicion to Search**

As a rule, searches conducted without a warrant are deemed unreasonable unless the situation presents an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). One such exception allows an officer, in the course of a temporary detention, to conduct a limited search for weapons where it is reasonably warranted for his safety or the safety of others. *See Terry*, 392 U.S. 1 at 30 (stating officer concerned for his or other's safety during encounter may perform limited search of outer clothing to look for weapons). Where a detention based upon reasonable suspicion involves the occupant of a motor vehicle, a search for weapons may include the passenger compartment of the vehicle if the officer has reason to believe that the vehicle contains weapons potentially dangerous to

the officer. *See Michigan v. Long*, 463 U.S. 1032, 1049–53 (1983) (extending reasonable search for weapons to motor vehicle). The search must be limited to those areas in which a weapon may be placed or hidden. *Id.* at 1049. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 1050 (quoting *Terry*, 392 U.S. at 27). If an officer, while conducting a legitimate *Terry* search of the interior of a vehicle, discovers contraband other than weapons, the Fourth Amendment does not require its suppression. *Minnesota v. Dickerson*, 508 U.S. 366, 374 (1993).

Officer Thompson testified that when Boatwright turned back to his vehicle, after giving the officer two of the three pill bottles in his possession, Boatwright blocked Officer Thompson's view of the inside of his car and its console. Boatwright's demeanor changed, and he became agitated. Officer Thompson testified that he was concerned for his safety. He pulled Boatwright from his vehicle, while watching Boatwright's hands to ensure he did not have a weapon and that he was not destroying evidence.

Judging the evidence in a light most favorable to the trial court's ruling, the evidence supports a finding that Officer Thompson was concerned for his safety when he detained Boatwright and searched the car. *See Carmouche v. State*, 10 S.W.3d 323, 330 (2000) (even though officer admitted searching for narcotics and

weapons, evidence supported finding that officer was concerned for his safety when he conducted frisk). Moreover, such a belief was objectively reasonable considering the circumstances. Officer Thompson had been informed that a mechanic had been sent to the hospital after being pinned by a vehicle driven by Boatwright. When Officer Thompson spoke with Boatwright, he struggled to name prescription medications that he was taking. When the officer asked to see the prescriptions, Boatwright handed him only two of three bottles visible to Officer Thompson. One of the bottles had multiple types of pills in it, and when Officer Thompson asked for prescriptions related to the variety of pills, Boatwright became agitated. Boatwright then made furtive gestures inside the car, refused to leave the car, and did not give the officer the third pill bottle.

The trial court did not err in concluding that Officer Thompson articulated reasonable grounds to fear for his personal safety and to conduct a search to neutralize the possible danger to himself. *See Carmouche*, 10 S.W.3d at 330. The justification for this search rests on the danger that weapons, stored in a car, could be used against the officer or others. *Dickerson*, 508 U.S. at 374. The fact that Boatwright had been removed from the car by Officer Thompson did not neutralize any possible danger. *See Long*, 463 U.S. at 1052–53 (noting that suspect can break away from police control to retrieve weapon from car or, if not placed under arrest, be allowed to reenter car, thereby having access to any weapons inside).

Having concluded the search was justified at the outset, we now turn to the extent of the search. Boatwright argues that once the officer pulled him from the vehicle, the search was beyond the lawful scope of investigation. The record does not support this contention. An officer may conduct a protective search of a vehicle in those areas in which a weapon may be placed or hidden. *Long*, 463 U.S. at 1049–51 (authorizing search of passenger compartment of an automobile in areas where weapon may be placed if officer believes suspect may gain control of weapons); *Terry*, 392 U.S. at 24 (stating officer may take necessary measure to determine if a suspicious person who he is investigating at closer range is carrying a weapon and to neutralize threat of physical harm). The shaving case sitting on the seat next to Boatwright was within his reach when he was within the vehicle and could have been easily accessed should Boatwright have gained entry to the vehicle again. The search of the shaving kit was reasonable because it could have contained a weapon. *See Long*, 463 U.S. at 1050–51 ("The trial court determined that the leather pouch containing marijuana could have contained a weapon.").

Officer Thompson found methamphetamine in the shaving kit, rather than a weapon. He testified that he recognized it from his training and experience. In his search for weapons, the officer was not required to ignore contraband. *Long*, 463 U.S. at 1050 (stating should officer "discover contraband other than weapons" while searching interior of car, he "clearly cannot be required to ignore the

12

contraband" and the Fourth Amendment does not require its suppression). Boatwright also argues that the officer "unlawfully prolonged [the] detention." The record does not support any contention that there was delay between Boatwright's detention and the search of the vehicle that uncovered methamphetamine.

The trial court did not err in denying Boatwright's motion to suppress. Having concluded that the officer had reasonable suspicion to detain Boatwright and search his vehicle, we need not reach Boatwright's issues related to probable cause and the sight of marijuana.

## Conclusion

We affirm the trial court's order.


Peter Kelly
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.

Do not publish. TEX. R. APP. P. 47.2(b).