**Opinion issued August 8, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00558-CR

———————————

**DEEANTOINE REED LEWIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 506th District Court**
**Waller County, Texas**
**Trial Court Case No. 21-12-17920**

---

## MEMORANDUM OPINION

A jury found appellant Deeantoine Reed Lewis guilty of the felony offense of evading arrest or detention.[1] The jury returned a special issue affirmatively finding that Lewis used a deadly weapon, namely, a motor vehicle, during the commission

---

[1]    *See* TEX. PENAL CODE § 38.04; TEX. TRANSP. CODE § 541.201.

of the offense. After finding true the allegations in two felony enhancement paragraphs, the jury assessed his punishment at confinement for 50 years.[2] The trial court sentenced Lewis in accordance with the jury's verdict and entered its affirmative finding.

Before trial began, Lewis filed a motion to suppress the "fruits of []his arrest and detention," challenging the lawfulness of his arrest under Texas law.[3] After an evidentiary hearing, the trial court denied Lewis's motion to suppress. Lewis now challenges that ruling.

In his sole issue, Lewis contends that the trial court erred in denying his motion to suppress because the arresting officer "was not primarily motivated by his community caretaking function and any encounter quickly escalated to a detention unsupported by reasonable suspicion."

We affirm.

## Background

At the hearing on Lewis's motion to suppress, Waller County Sheriff's Office Deputy C. Rodriguez testified that, at around 10:30 p.m. on September 1, 2021, he was on patrol in southern Waller County, approximately three miles from the City

---

[2]     *See* TEX. PENAL CODE § 12.42.

[3]     TEX. CONST. art. 1, § 9; TEX. CODE CRIM. PROC. art. 38.23(a).

of Brookshire. He noted that "it's a remote area," in that "[t]here is not very much around there," other than "a lot of pastures, rice fields, [and] a lot of farming."

While on patrol, Deputy Rodriguez came upon Lewis's car "sitting in the roadway" on Morton Road, near Farm-to-Market Road 362. Initially, Lewis's car was "blacked out," but Lewis activated his hazard lights a few seconds later. Rodriguez testified that Lewis's vehicle constituted a traffic hazard because there were no streetlights—it was "completely blacked out in that area"—and another driver "probably wouldn't see that vehicle sitting on the roadway."

Deputy Rodriguez activated his emergency lights and parked his patrol car behind Lewis's car. Rodriguez stated that his intention was to determine why the vehicle was stopped in the middle of the road and to get it off the roadway.

When Deputy Rodriguez got out of his car and approached the driver's-side door of Lewis's car, he noted that the engine was not running. Lewis, who was the car's sole occupant, was sweating profusely, and Rodriguez surmised that Lewis "had been sitting there for quite awhile."

The trial court admitted into evidence Deputy Rodriguez's body-camera video, which depicts his face-to-face encounter with Lewis.[4]

---

[4] Both parties, in their briefs, direct us to "State's exhibit 3," the unredacted version of Deputy Rodriguez's body-camera video. However, during the suppression hearing, the trial court admitted "State's Exhibit No. 3-A," which is the redacted version. Thus, we consider the trial court's ruling in light of Exhibit 3-A, the redacted version.

In the video, Deputy Rodriguez, who was holding a flashlight, approached the open driver's-side window of Lewis's car and asked, in a light tone, "What's going on, man?" Lewis replied that his car was "running a little hot." Rodriguez asked, "Where [are] you coming from?" And Lewis replied that he was coming from a friend's house on Katy Hockley Road. Rodriguez inquired about the nature of the car problem and explained that he could not leave Lewis sitting "in the middle of the road." Lewis stated that the car should be operable in about "20 or 30 minutes."

Deputy Rodriguez asked if Lewis had his driver's license. Lewis responded that he had an identification card and handed Rodriguez a Texas Identification Card. Rodriguez asked Lewis why he did not have a driver's license. Lewis replied that he had been unable to get an appointment, referring to the Texas Department of Public Safety. Rodriguez stated that "the county [was] cracking down real hard on people who don't have driver's licenses, and they want us to tow vehicles and stuff like that if you don't have a driver's license." Rodriguez asked if Lewis at least had proof of insurance with him, and Lewis replied that he did not.

Deputy Rodriguez told Lewis that he was going to check for outstanding warrants and then they might have to push Lewis's car off the road. Rodriguez asked Lewis if the address on his identification card was current, and Lewis replied in the affirmative. Rodriguez asked where his street was located. When Lewis replied that it was on Barker Cypress Road, Rodriguez asked, "So what are you doing over

4

here?" Lewis again stated that he was visiting a friend on Katy Hockley Road and added that he was "trying to get back home."

Deputy Rodriguez pointed out to Lewis that if he was on Katy Hockley and was going home to Barker Cypress, he would have traveled east. Instead, he had traveled west and was "going the complete opposite way" from where he lived. Rodriguez told Lewis that he was not being "straight up." Lewis replied, "I just got confused."

Deputy Rodriguez asked Lewis to step out of his car while Rodriguez checked for outstanding warrants. Rodriguez explained to Lewis that he had "ma[d]e contact" with him because his car was in the roadway. And, subsequently, he had learned that Lewis was not a licensed driver. Rodriguez noted that he would likely write Lewis a warning and that, after he ran Lewis's information, he would help push the car out of the roadway.

As Deputy Rodriguez began to step away, Lewis started his car. Rodriguez commanded him to turn it off, but Lewis ignored him and sped away. Rodriguez ran to his patrol car, activated his emergency sirens, and pursued Lewis.

Deputy Rodriguez testified that Lewis drove at speeds in excess of 100 miles per hour in a 55 mile-per-hour zone for approximately 4 miles. He drove on the wrong side of the road, through stop signs, and against a traffic light.

Once inside the City of Brookshire, Lewis "slammed on his brakes" to make a turn, and Rodriguez's patrol car collided with Lewis's car. Lewis then climbed out through the passenger side of his car and fled. Rodriguez pursued Lewis on foot for approximately 300 yards before apprehending him.

After the hearing, the trial court denied appellant's motion to suppress.

**Motion to Suppress Evidence**

In his sole issue, Lewis contends that the trial court erred in denying his motion to suppress because Deputy Rodriguez "was not primarily motivated by his community caretaking function and any encounter quickly escalated to a detention unsupported by reasonable suspicion."

**A.** *Standard of Review*

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard. *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023). "On the one hand, we afford almost total deference to the trial court's determination of historical facts and the trial court's rulings on mixed questions of law and fact, especially when those determinations are based on an assessment of credibility and demeanor." *State v. Torres*, 666 S.W.3d 735, 740 (Tex. Crim. App. 2023). "On the other hand, we review pure questions of law, as well as mixed questions of law and fact that do *not* turn on an assessment of credibility and demeanor, on a de novo

basis." *Id.* at 740–41. We review questions of statutory construction, which is a pure question of law, on a de novo, non-deferential basis. *Id.* at 741.

At a suppression hearing, the trial court is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, even if uncontroverted. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We generally consider only the evidence adduced at the suppression hearing unless the parties consensually re-litigate the issue at trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

In reviewing a trial court's ruling on a motion to suppress, we "must view all of the evidence in the light most favorable to the trial court's ruling." *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When, as here, the trial court does not make explicit findings of fact, we "infer[] the necessary factual findings that support the trial court's ruling if the record evidence . . . supports th[o]se implied fact findings." *Id.* We uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Ross*, 32 S.W.3d at 855–56.

**B.** *Legal Principles*

"The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980) (internal quotations omitted).

7

Not all encounters with law enforcement officers implicate the Fourth Amendment's protection against unreasonable seizures. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002). There are three distinct types of interactions between officers and citizens: (1) consensual encounters, (2) investigative detentions, and (3) arrests. *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011).

### (1)     Consensual Encounter

"Consensual police-citizen encounters do not implicate Fourth Amendment protections." *Id*. at 411. Police officers are "as free as any other citizen to knock on someone's door and ask to talk with them, to approach citizens on the street *or in their cars* and to ask for information or their cooperation." *Garcia-Cantu*, 253 S.W.3d at 243 (emphasis added). An officer may ask questions, determine whether assistance is needed, and request identification. *See Bostick*, 501 U.S. at 434–35; *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). No justification is required. *Woodard*, 341 S.W.3d at 411. And the citizen may terminate the encounter at will. *Id.* "The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Bostick*, 501 U.S. at 434.

An encounter loses its consensual nature and implicates Fourth Amendment protections if the officer "convey[s] a message that compliance with [his] requests is required." *Id.* at 435. No bright-line rule governs when a consensual encounter

8

becomes a seizure. *Castleberry*, 332 S.W.3d at 466–67. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554.

In determining whether a reasonable person in the citizen's shoes would have felt free to ignore an officer's requests or terminate the interaction, courts consider the totality of the circumstances surrounding the interaction from an objective perspective. *Castleberry*, 332 S.W.3d at 467. Factors rising to a seizure have included: the threatening presence of several officers; an officer's display of a weapon; use of flashing lights as a show of authority; physically touching an individual; ordering the individual to roll down the car window or to get out of the car; an officer's tone of voice or use of words indicating that compliance with the officer's request might be compelled; and blocking an individual's vehicle. *Mendenhall*, 446 U.S. at 554; *Garcia–Cantu*, 253 S.W.3d at 243. When an encounter becomes a detention or arrest, both of which are seizures, Fourth Amendment scrutiny is necessary. *Woodard*, 341 S.W.3d at 411.

### (2) Investigative Detention

An officer may conduct an investigative detention if he reasonably suspects that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "Reasonable suspicion exists if the officer has specific,

articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity." *Id.* For instance, a police officer may lawfully stop a vehicle if he has a reasonable basis for suspecting the motorist has committed a traffic violation. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). The reasonable suspicion standard is wholly objective; the subjective intent of the officer conducting the investigation is irrelevant. *Id.*

### (3) Probable Cause for a Warrantless Arrest

"Probable cause" for a warrantless arrest exists if, "when the arrest is made, the facts, circumstances, and reasonably trustworthy information known to the arresting officer[] are sufficient for a prudent person to conclude that the individual committed or was committing a criminal offense." *Espinosa*, 666 S.W.3d at 667. Specific and articulable facts are required. *Id.* A mere suspicion or hunch is insufficient. *Id.* The test for probable cause is objective, unrelated to the subjective beliefs of the arresting officer, and requires consideration of the totality of the circumstances. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009).

"A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." TEX. CODE CRIM. PROC. art. 14.01(b); *Espinosa*, 666 S.W.3d at 667. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he

10

may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *see State v. Gray*, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005).

For instance, Chapter 521 of the Texas Transportation Code generally provides that a person "may not operate a motor vehicle on a highway in this state unless the person holds a driver's license." TEX. TRANSP. CODE § 521.021.[5] And a person required to hold a license "shall . . . have in the person's possession while operating a motor vehicle the class of driver's license appropriate for the type of vehicle operated" and "display the license on the demand of a . . . peace officer." *Id.* § 521.025(a). "A peace officer may stop and detain a person operating a motor vehicle to determine if the person has a driver's license." *Id.* § 521.025(b). And a "person who violates this section commits an offense." *Id.* § 521.025(c).

Further, section 543.001 of the Transportation Code "allows any peace officer to arrest without a warrant a person found committing a traffic violation," apart from exceptions not applicable here. *Marzett v. McCraw*, 511 S.W.3d 210, 213 (Tex.

---

[5] Because the term "highway" is not defined in Transportation Code, Subtitle B, Chapter 521, we apply the definition in Subtitle C. TEX. TRANSP. CODE § 521.001(b) ("A word or phrase that is not defined by this chapter but is defined by Subtitle C has the meaning in this chapter that is assigned by that subtitle."). Pursuant to Subtitle C, the term "[h]ighway" means "the width between the boundary lines of a publicly maintained way any part of which is open to the public for vehicular travel." *Id.* § 541.302(5).

App.—Dallas 2015, pet. denied) (citing TEX. TRANSP. CODE §§ 543.001, .004(a)(1)).[6]

## C.  *Analysis*

Lewis maintains that "no reasonable person would have felt free to terminate the encounter" with Deputy Rodriguez and that Rodriguez "did not have reasonable suspicion to believe that [Lewis] was engaged in, or about to engage in, criminal activity so as [to] justify the detention."

However, based on this record, we conclude that the initial interaction between Deputy Rodriguez and Lewis was a consensual encounter, which then gave rise to probable cause for arrest.

The pertinent evidence shows that when Deputy Rodriguez happened upon Lewis's vehicle, it was parked in the middle of the roadway without any lights and Lewis was sitting inside. Rodriguez noted that Lewis's car constituted a traffic hazard because there were no streetlights—it was "completely blacked out in that area"—and another driver "probably wouldn't see that vehicle sitting on the

---

[6]     *See Cano v. State*, No. 03-15-00485-CR, 2017 WL 3908640, at *10 (Tex. App.—Austin Aug. 24, 2017, pet. ref'd) (mem. op., not designated for publication) ("[T]here was undisputed evidence presented that Cano did not have his driver's license with him at the time of the stop, which is an arrestable offense," and thus "the district court would not have erred in concluding that [officer] had probable cause to arrest Cano for committing that offense.").

roadway." Rodriguez activated his emergency lights and parked his patrol car behind Lewis.

When Deputy Rodriguez got out and approached the driver's side door of Lewis's car, he noted that the engine was not running. Rodriguez's body-cam video shows that he held a flashlight as he approached Lewis's open window and asked, in a light tone, "What's going on, man?" Lewis replied that his car was "running a little hot." Rodriguez asked, "Where [are] you coming from?" And Lewis replied that he was coming from a friend's house on Katy Hockley Road. Rodriguez inquired about the nature of the car problem and explained that he could not leave Lewis sitting "in the middle of the road."

Deputy Rodriguez asked if Lewis had his driver's license. Lewis responded that he had an identification card and handed Rodriguez a Texas Identification Card without hesitation. Lewis admitted that he did not have a driver's license.

At the outset, Deputy Rodriguez was free to stop and talk with Lewis, to inquire about his car being parked in the middle of a dark and desolate road without any lights, and to ask to see his driver's license.[7] No justification was required.

_____

[7] *See Florida v. Bostick*, 501 U.S. 429, 435 (1991); *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011) (holding that officer may, without reasonable suspicion, request identification or information from citizen); *Cole v. State*, No. 03-08-00045-CR, 2008 WL 3877714, at *4 (Tex. App.—Austin Aug. 20, 2008, no pet.) (mem. op., not designated for publication) (holding that asking for and examining driver's license, without more, does not transform encounter into detention).

13

*Woodard*, 341 S.W.3d at 411. And Lewis readily complied. Even though Rodriguez did not tell Lewis that his request for identification or information may be ignored, the fact that Lewis complied with the request does not negate the consensual nature of the encounter. *See Castleberry*, 332 S.W.3d at 466.

In considering whether a reasonable person in Lewis's shoes would have felt free to decline Deputy Rodriguez's requests or to terminate the interaction, we consider the totality of the circumstances surrounding the interaction. *See id.* at 467.

Deputy Rodriguez activated the emergency lights on his patrol car when he approached Lewis's car and parked, and he held a flashlight when he approached Lewis on foot. These factors can suggest a detention. *See Garcia–Cantu*, 253 S.W.3d at 245 n.43 (noting that use of "blue flashers" or police emergency lights is frequently held sufficient to constitute detention, either in parked or moving car).

However, when viewed in the totality of the circumstances of this case, the evidence shows that the encounter occurred at 10:30 p.m., in a dark area with no ambient lighting, and Lewis was parked in the middle of a roadway where another motorist could have hit him. Thus, the record supports the trial court's implied finding that Deputy Rodriguez activated his lights and used a flashlight for safety reasons.[8]

---

[8] *See Cole*, 2008 WL 3877714, at *4 (holding record supported trial court's implied finding that activation of patrol car's emergency lights in dark area was for safety

14

Additionally, Deputy Rodriguez parked behind Lewis in an open roadway and did not block Lewis's vehicle. *See Franks*, 241 S.W.3d at 142 ("Although [officer] parked his vehicle behind appellant's, nothing in the record suggests that the position of his vehicle blocked hers or prevented appellant from leaving the rest area by simply driving forward.").[9]

With respect to whether a reasonable person in Lewis's shoes would have felt able to terminate the interaction with Deputy Rodriguez in light of the car being inoperable: "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, *the police conduct* would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *See Bostick*, 501 U.S. at 437 (emphasis added; internal quotation omitted). Here, according to Lewis, his car was inoperable. Thus, based on Lewis's own representation, his freedom of movement was restricted by a factor independent of any conduct by Deputy Rodriguez. *See id.* at 436 ("Bostick's freedom of movement was restricted by a factor independent of police conduct—i.e., by his being a passenger on a bus.").

---

reasons and did not constitute detention); *Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd) (holding officer's activation of patrol car's overhead lights was not determinative where officer testified that he activated lights to illuminate rest area, which was dark and did not have any lighting).

[9] *Cf. State v. Garcia–Cantu*, 253 S.W.3d 236, 243, 246 & n.44 (Tex. Crim. App. 2008) ("Most courts have held that when an officer 'boxes in' a car to prevent its voluntary departure, this conduct constitutes a Fourth Amendment seizure.").

Further, Deputy Rodriguez was the sole officer on the scene. *See Mendenhall*, 446 U.S. at 554 (considering presence of multiple officers threatening). There is no evidence that he displayed a weapon or physically touched Lewis. *See id.*; *Monjaras v. State*, 664 S.W.3d 921, 928 (Tex. Crim. App. 2022). And the trial court could have reasonably found Rodriguez's tone, as heard in the body camera video, to be friendly and conversational. *See Mendenhall*, 446 U.S. at 554; *Monjaras*, 664 S.W.3d at 928. Thus, the video does not reasonably indicate that Lewis's compliance with Rodriguez's requests for information was compelled. *See Mendenhall*, 446 U.S. at 554; *Monjaras*, 664 S.W.3d at 928.

Viewing the totality of the evidence in the light most favorable to the trial court's ruling, we therefore conclude that Deputy Rodriguez's initial interaction with Lewis did not constitute such a show of authority as to indicate to a reasonable person that he would not be free to terminate the encounter. *See Castleberry*, 332 S.W.3d at 467; *Garcia–Cantu*, 253 S.W.3d at 241. As a result, we hold that Deputy Rodriguez's initial interaction with Lewis constituted a consensual encounter. *See Franks*, 241 S.W.3d at 142 ("The initial interaction between [the officer] and appellant, after he approached the car, was an encounter.").[10]

---

[10]    *See also Adams v. State*, No. 02-17-00358-CR, 2019 WL 1065913, at *13 (Tex. App.—Fort Worth Mar. 7, 2019, pet. ref'd) (mem. op., not designated for publication) ("Sergeant Cooper's walking up to Adams's parked car and requesting his identification was a consensual encounter . . . ."); *Gilbert v. State*, No. 07-16-

However, the initial consensual encounter progressed to probable cause for arrest once Lewis admitted that he did not possess a driver's license. *See* TEX. CODE CRIM. PROC. art. 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); *Villarreal v. State*, 631 S.W.3d 198, 207 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("The officer developed probable cause to arrest appellant almost immediately after the stop began because appellant did not possess a driver's license.").[11]  And, as a matter of law, an arrest for a minor traffic violation is not an unreasonable seizure under the Fourth Amendment. *Atwater*, 532 U.S. at 340; *Gray*, 158 S.W.3d at 469.

Although Lewis was parked at the time of his encounter with Deputy Rodriguez, the record shows that Lewis was the sole occupant of his car, and he admitted that he had recently operated his vehicle and intended to drive home. *See*

00158-CR, 2016 WL 7010570, at *3 (Tex. App.—Amarillo Nov. 22, 2016, pet. ref'd) (mem. op., not designated for publication) (holding that, under totality of circumstances, consensual encounter occurred when officer approached car parked in church parking lot near midnight and asked whether anything was wrong and whether he could see occupants' identification).  Because we conclude that the initial interaction between Deputy Rodriguez and Lewis was a consensual encounter, we need not address the community-caretaking exception the parties dispute.

[11]  *See also* TEX. TRANSP. CODE §§ 521.021 (person operating motor vehicle must possess license), 521.025 (person must display license on demand of peace officer and violation constitutes offense); *Gracia v. State*, No. 14-15-00106-CR, 2016 WL 3965108, at *3 (Tex. App.—Houston [14th Dist.] July 21, 2016, pet. ref'd) (mem. op., not designated for publication) ("After appellant told [officer] that he did not have a driver's license, [officer] reasonably concluded that appellant was violating the Texas Transportation Code by driving without a driver's license," and "[officer] therefore had probable cause to arrest appellant.").

17

*Espinosa*, 666 S.W.3d at 668 (notwithstanding that car was parked, statements by defendant found seated in driver's seat about where she was coming from and where she was headed "could be interpreted by a prudent person as admissions" that she had operated her vehicle).

Because there was a legitimate basis for Lewis's arrest, it is not relevant that Deputy Rodriguez did not state that he planned to arrest Lewis for his failure to display a driver's license before Lewis drove away. An officer's subjective reasons for an arrest are not considered. *See Walter v. State*, 28 S.W.3d 538, 542–43 (Tex. Crim. App. 2000); *Garcia v. State*, 218 S.W.3d 756, 760 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Consequently, we further hold that the record supports the trial court's implied finding that Rodriguez had probable cause to arrest Lewis for driving without a license. *See Espinosa*, 666 S.W.3d at 667.

Accordingly, based on all of the reasons above, we overrule Lewis's sole issue and hold that the trial court did not abuse its discretion in denying Lewis's motion to suppress.

## Conclusion

We affirm the trial court's judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).